UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
IN RE APPLICATION OF USA PURSUANT           )   ML No: 1:21-ml-00942
TO 18 U.S.C. § 3512 FOR ORDER FOR           )
COMMISSIONER'S APPOINTMENT FOR              )
FRAUD INVESTIGATION                         )
_____)

*Reference:*   DOJ Ref. # CRM-182-78624

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Laster, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Portugal. In support of this application, the United States asserts:

RELEVANT FACTS

1.   The Competent Authority of Portugal, the Prosecutor General's Office, submitted a request for assistance (the Request) to the United States, pursuant to the Instrument Between the United States of America and Portugal as contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union, signed 25 June 2003, U.S.-Port., July 14, 2005, S. TREATY DOC. NO. 109-13 (2006) (the Treaty).

2.      As stated in the Request, the Public Prosecutor's Office of the Judicial District of Leiria, in Portugal, is investigating Maria Filipa Andrade Almeida, Helder Antonio Alves Lourenco, and unknown subjects for fraud, which occurred on or about February 2, 2021 in violation of the criminal laws of Portugal, specifically, Article 221 (1)(5)(a) of the Portuguese Criminal Code.  Under the Treaty, the United States is obligated to assist in response to the Request.

3.      According to Portuguese authorities, on February 7, 2020, 21 transfers, totaling 38,000 EUR (approximately 44,086 USD) were made using several different bank cards.  The bank cards were issued in the United States and the United Kingdom and allegedly held in the name of Mark Stephan.  These transactions were reported by a Portuguese Bank to Portuguese authorities as being potentially fraudulent after the banks controls and procedures for detecting money laundering and the financing of terrorism reported inconsistencies in the transfers.  All of the transfers appeared to be payments for purchases made at bars located in Lisbon, Portugal.  However, all of the transactions were made within a few minutes of each other over a two-hour period.

4.      Six of the cards used in the transactions were issued by banks located in the United States.  On February 7, 2020, a transfer of 5,700 EUR (approximately 6,615 USD) was made to a bar in Lisbon, Portugal from Wells Fargo card number XXXX-XXXX-XXXX-6715 at 3:57am.  On February 7, 2020, an unknown subject attempted to transfer 2,500 EUR (approximately 2,901 USD) for payment to a bar in Lisbon, Portugal from Wells Fargo card number XXXX-XXXX-XXXX-6715 at 5:22am.  The transfer was unsuccessful as the bank declined the transaction.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Wells Fargo card number XXXX-XXXX-XXXX-6715 at 5:40am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Wells Fargo card number XXXX-XXXX-

XXXX-6715 at 5:46am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Wells Fargo card number XXXX-XXXX-XXXX-6715 at 5:55am.

5. On February 7, 2020, a transfer of 5,700 EUR (approximately 6,615 USD) was made to a bar in Lisbon, Portugal from Citibank account number XXXX-XXXX-XXXX-3071 at 3:58am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Citibank account number XXXX-XXXX-XXXX-3071 at 5:39am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Citibank account number XXXX-XXXX-XXXX-3071 at 5:41am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Citibank account number XXXX-XXXX-XXXX-3071 at 5:43am.

6. On February 7, 2020, an unknown subject attempted to transfer of 5,700 EUR (approximately 6,615 USD) to a bar in Lisbon, Portugal from Chase account number XXXX-XXXX-XXXX-4214 at 3:59am.  The transfer was unsuccessful as the bank declined the transaction.  On February 7, 2020, a transfer of 600 EUR (approximately 696 USD) was made to a bar in Lisbon, Portugal from Chase account number XXXX-XXXX-XXXX-4214 at 4:00am.  On February 7, 2020, a transfer of 400 EUR (approximately 464 USD) was made to a bar in Lisbon, Portugal from Chase account number XXXX-XXXX-XXXX-4214 at 4:01am.  On February 7, 2020, a transfer of 200 EUR (approximately 232 USD) was made to a bar in Lisbon, Portugal from Chase account number XXXX-XXXX-XXXX-4214 at 4:01am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Chase account number XXXX-XXXX-XXXX-4214 at 5:38am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from

Chase account number XXXX-XXXX-XXXX-4214 at 5:41am.

7. On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Bay First Bank account number XXXX-XXXX-XXXX-8820 at 5:38am.  On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Bay First Bank account number XXXX-XXXX-XXXX-8820 at 5:41am.

8. On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from Capital One account number XXXX-XXXX-XXXX-1043 at 5:46am.

9. On February 7, 2020, a transfer of 1,500 EUR (approximately 1,740 USD) was made to a bar in Lisbon, Portugal from and USAA account number XXXX-XXXX-XXXX-1555 at 5:51am.  In order to determine why the transactions were made, Portuguese authorities questioned the Automatic Payment Terminal (APT) users, also known as point-of-sale users, Almeida and Lourenco regarding the transactions.  However, the APT users were unable to give a valid justification for the number, size, and timing of the transactions.

10. To further the investigation, Portuguese authorities have asked U.S. authorities to provide bank records from Wells Fargo account number XXXX-XXXX-XXXX-6715, Citibank account number XXXX-XXXX-XXXX-3071, Chase account number XXXX-XXXX-XXXX-4214, Bay First Bank account number XXXX-XXXX-XXXX-8820, Capital One account number XXXX-XXXX-XXXX-1043, and USAA account number XXXX-XXXX-XXXX-1555, located in the United States.

LEGAL BACKGROUND

11. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

12. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*              \*              \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*              \*              \*

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

13. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

14. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4] Upon

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16,

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

15. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).  REQUEST FOR ORDER

16. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the

---

2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

Prosecutor General's Office in Portugal, and seeks assistance in the investigation of fraud – a criminal offense in Portugal. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

17. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

18. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

19. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Laster, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: *Erica Laster*
Erica Laster
Trial Attorney
D.C. Bar Number 1032449
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 353-1677
Erica.Laster@usdoj.gov